UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **SHARON COUCH** and **DICKEY COUCH,** § § § | |
| *Plaintiffs*, § § | |
| v. § | Civil Action No. 4:24-cv-00085-O |
| § | |
| **THE BANK OF NEW YORK MELLON,** *f/k/a* **THE BANK OF NEW YORK,** *as Successor Trustee for* **JPMORGAN CHASE BANK, N.A.,** *as Trustee for* **NOVASTAR MORTGAGE FUNDING TRUST, SERIES 2005-4 NOVASTAR HOME EQUITY LOAN ASSET-BACKED CERTIFICATES, SERIES 2005-4,** § § § § § § § § § § | |
| *Defendant*. § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiffs' Motion for Temporary Restraining Order ("TRO") and Brief in Support (ECF No. 4), filed February 1, 2024; Defendant's Motion to Dismiss for Failure to State a Claim and Brief and Appendix in Support (ECF Nos. 5, 6, 7), filed February 1, 2024; Defendant's Response in Opposition to the Motion for TRO and Brief in Support (ECF Nos. 11, 12), filed February 9, 2024; Plaintiffs' Response in Opposition to the Motion to Dismiss and Reply in Support of the Motion for TRO and Brief and Appendix in Support (ECF Nos. 13, 14, 15), filed February 16, 2024; and Defendant's Reply in Support of the Motion to Dismiss (ECF No. 17), filed February 23, 2024.

For the reasons set forth herein, the Court **GRANTS in part** and **DENIES in part** the Motion to Dismiss (ECF No. 5) and **GRANTS** the Motion for TRO (ECF No. 4).

## I. BACKGROUND[1]

On January 22, 2024, Dickey Roland Couch ("Mr. Couch") and Sharon Gale Couch ("Mrs. Couch") (altogether, "Plaintiffs" or the "Couches") brought this declaratory judgment action to quiet title against The Bank of New York Mellon ("Defendant" or the "Bank") in Tarrant County Court. The Couches allege and seek judicial declaration that the Bank has no claim to the real property located at 9845 Ray White Road, Keller, Texas 76248 in Tarrant County (the "Property") because: (1) the Bank failed to exercise power of sale on its lien on the Property within the applicable four-year statute of limitations period; and (2) in the alternative, the Couches have adversely possessed the Property beyond the applicable five-year statutory possession period. In addition to declaratory judgment, the Couches request injunctive and monetary relief as well as attorney's fees and costs for their claim to quiet title. On January 25, 2024, the Bank removed this action to the U.S. District Court for the Northern District of Texas, Fort Worth Division, citing diversity of citizenship and an amount in controversy in excess of $75,000 as the basis for the Court's subject-matter jurisdiction.[2]

### A. The Parties

Plaintiffs are individuals and citizens of the State of Texas. They are husband and wife who have been homestead residents of the Property and have paid property taxes on it since at

---

[1] Unless otherwise noted, the facts recited herein are drawn from Plaintiffs' Original Petition. *See* Not. of Removal Ex. E-2, ECF No. 1-1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). When noted via citation reference, the other facts recited herein are drawn from matters of public record of which judicial notice may be properly taken at the 12(b)(6) stage, such as prior court proceedings, pleadings, opinions, orders, and judgments attached to the motion to dismiss or otherwise appearing in the record thereof. *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019); *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020).

[2] *See generally* Not. of Removal 1-8, ECF No. 1.

least 2001. As of the filing of this action, Plaintiffs continue to reside at and remain in sole possession of the Property together.

Defendant is a major bank holding company incorporated in the State of Delaware and headquartered in the State of New York. It is the Trustee for NovaStar Mortgage Funding Trust, Series 2005-4 NovaStar Home Equity Loan, Asset-Backed Certificates, Series 2005-4.

### B. The Nature of the Lawsuit

On or about September 23, 2005, Mr. Couch signed a Texas Home Equity Note (the "Note") borrowing $150,000 from NovaStar Mortgage, Inc. ("NovaStar"). On or about the same day, the Couches executed a Texas Home Equity Security Instrument (the "Deed of Trust") to Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee to secure repayment of the Note. According to the Couches, the Note was sold multiple times between the Years 2005 and 2014. During this period, the Couches maintain that they were unable to identify the holder of the Note for purposes of making payments. The Bank eventually became the mortgagee under the Deed of Trust as well as the holder and owner of the Note, which remains true as of the filing of this action. On or about April 2, 2014, the Couches received a notice of default and intent to accelerate (the "Notice of Default") from the Bank. The Notice of Default provided that if the Note was accelerated, the Bank would proceed to schedule a foreclosure of the Property.

*First Action.* On July 7, 2014, Mr. Couch filed an action against Ocwen Loan Servicing, LLC ("Ocwen") and the Bank in the 96th Judicial District Court of Tarrant County (Cause No. 096-272989-14) (the "First Action"). Mr. Couch alleged that the Notice of Default was improper. He maintained that the mortgage loan had unexpected payment increases, that Ocwen informed him of his default on the mortgage loan despite making regular payments, and that he was unable to obtain chain-of-title information. On the basis of these allegations, Mr. Couch

advanced breach of contract, fraud, negligent misrepresentation, wrongful debt collection, and deceptive trade practices claims against Ocwen and the Bank.

On August 5, 2014, Ocwen and the Bank removed the First Action to the Fort Worth Division of the U.S. District Court for the Northern District of Texas (Civil Action No. 4:14-cv-614). The Bank simultaneously filed a counterclaim against Mr. Couch and third-party complaint against Mrs. Couch which sought judicial foreclosure on the Property. The Bank's August 5, 2014 counterclaim declared the Note accelerated. After Mr. Couch filed an amended complaint, Ocwen and the Bank moved to dismiss the First Action pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court entered an order dismissing Mr. Couch's fraud claim on November 10, 2014. After the Couches filed a stipulation of dismissal with prejudice as to their claims, the District Court entered a Final Judgment dismissing with prejudice all claims and causes of action asserted against Ocwen and the Bank on July 30, 2015.

On August 3, 2015, the District Court entered a Final Judgment declaring that Ocwen and the Bank were entitled to conduct a non-judicial foreclosure sale of the Property on or after November 1, 2015. The Final Judgment specified that such a foreclosure sale would divest the Couches of any right, title, or interest in the Property. The Couches did not appeal the Final Judgment of the First Action, while the Bank noticed and posted the Property for foreclosure to occur on March 1, 2016.

***Bankruptcy Case.*** Before the foreclosure sale of the Property could occur, Mrs. Couch filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code (Bankr. Case No. 16-40931-mxm) on March 1, 2016. (the "Bankruptcy Case"). This automatically stayed the foreclosure of the Property. Per the terms of the confirmed Chapter 13 Plan, the Chapter 13 Trustee disbursed certain payments towards pre-petition mortgage arrears to Ocwen. On January 23, 2017, the

Bank was granted relief from the stay and the Bankruptcy Case was dismissed without prejudice on account of Mrs. Couch's failure to make timely payments to the Chapter 13 Trustee.

*Second Action.* On or about October 15, 2019, the Couches received a notice of foreclosure sale and notice of posting and sale for November 5, 2019. Before the foreclosure sale of the Property could occur, however, the Couches filed another action against PHH Mortgage Corporation ("PHH") and the Bank on November 4, 2019 in the 352nd Judicial District Court of Tarrant County (Cause No. 352-313053-19) (the "Second Action"). Therein, the Couches sought temporary and permanent injunctive relief preventing the foreclosure sale of the Property. The Couches alleged that the foreclosure sale would have been improper because PHH and the Bank abandoned the acceleration of the Note by sending new notice of default and intent to accelerate without actually re-accelerating the Note prior to posting the Property for foreclosure. On the basis, the Couches asserted claims for breach of contract and declaratory judgment that the Bank was not entitled to a valid claim for foreclosure of the Property. On November 4, 2019, the County Court entered a TRO that prevented the foreclosure sale for 14 days.

PHH and the Bank removed the Second Action to the Fort Worth Division of the U.S. District Court for the Northern District of Texas (Civil Action No. 4:19-cv-935) on November 5, 2019. Upon removal, the Bank filed a counterclaim for declaratory judgment to enforce the Final Judgment entered in the First Action, as well as an alternative claim for judicial foreclosure. On December 19, 2019, the Couches filed an amended complaint alleging that PHH and the Bank violated provisions of the Real Estate Settlement Procedures Act ("RESPA") that barred their entitlement to proceed with foreclosure. The Couches advanced claims for RESPA violations, breach of contract, and declaratory judgment that the Bank is not entitled to proceed with foreclosure, that the Final Judgment entered in the First Action no longer had force or effect, and

that the Bank was not entitled to foreclose on the Property for failure to re-accelerate the Note after the Bankruptcy Case.

On December 22, 2020, PHH and the Bank moved for judgment on the pleadings of the Second Action pursuant to Federal Rule of Civil Procedure 12(c). On January 20, 2021, the District Court granted the motion and entered a Final Judgment dismissing all of the Couches' claims against PHH and the Bank with prejudice. Several days later on January 25, 2021, the District Court granted judgment in favor of the Bank on its counterclaim and entered a Final Judgment authorizing the Bank to proceed with non-judicial foreclosure of the Property pursuant to the August 3, 2015 Final Judgment of the District Court.

The District Court subsequently entered an Amended Final Judgment on March 8, 2021 that authorized the Bank to proceed with judicial foreclosure of the Property. The Amended Final Judgment further decreed that: (i) the subject loan was valid and enforceable; (ii) the Deed of Trust reflected the Bank's valid security interest in the Property; (iii) all right, title, and interest of the Couches in the Property was subject to foreclosure; and (iv) the Bank was authorized to foreclose on the Property in compliance with the Note and the Deed of Trust. The Couches did not appeal the Amended Final Judgment of the Second Action.

*Foreclosure and Eviction.* On or about July 3, 2023, the Bank posted the Property for sale in an August 1, 2023 Constable's Sale and purchased the Property at the Constable's Sale for $342,930.00. The Bank thereby acquired a Constable's Deed on the Property, which it still holds as of the filing of this action. On September 13, 2023, the Constable's Deed was recorded in the official public records of Tarrant County, Texas as Instrument No. D223165212. On or about the same time, the Bank filed suit to evict the Couches from the Property in Tarrant County Justice of the Peace Court No. 3 (Cause No. JP03-23-E00072606) (the "Eviction

Action"). There, a judgment of possession was ordered in favor of the Bank on October 9, 2023. The Couches appealed the Eviction Action to Tarrant County Court at Law No. 1 (Cause No. 2023-007641-1). The County Court at Law entered a judgment of possession in favor of the Bank in January 2024.

*Present Action.* On January 22, 2024, the Couches filed this present action to quiet title against the Bank in Tarrant County Court at Law No. 1 (Cause No. 2024-000558-1). The Couches allege and request a judicial declaration that the Bank has no claim to the Property because: (1) the Bank failed to exercise power of sale on its lien on the Property within the applicable four-year statute of limitations period; and (2) in the alternative, the Couches have adversely possessed the Property beyond the applicable five-year statutory possession period. The Couches seek a declaratory judgment, TRO, injunctive and monetary relief, and attorney's fees and costs pursuant to their quiet title claim. On January 25, 2024, the Bank removed this action to the Fort Worth Division of the U.S. District Court for the Northern District of Texas. On January 31, 2024, the Couches purportedly discovered that there is a pending sale on the Property pursuant to the listing of the Property on www.Hubzu.com.

### C. The Motions Before the Court

Shortly after the Bank's removal of this action to federal court, the Couches moved the Court to issue a TRO preventing the Bank from evicting the Couches and selling the Property.[3] The Bank simultaneously moved the Court to dismiss this action with prejudice for the Couches'

---

[3] *See* Pls.' Mot. for TRO, ECF No. 4.

failure to state a quiet title claim.[4] Following completion of the parties' briefing, both motions are now ripe for the Court's review.[5]

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule 8(a) pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard on its claim, the defendant may file a motion to dismiss it under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

---

[4] *See* Def.'s Mot. to Dismiss, ECF No. 5.
[5] *See generally* Pls.' Mot. for TRO Br., ECF No. 4; Def.'s Mot. to Dismiss Br. & App'x., ECF Nos. 6, 7; Def.'s TRO Resp. Br., ECF No. 12; Pls.' TRO Reply & Mot. to Dismiss Resp. Br. & App'x., ECF Nos. 14, 15; Def.'s Mot. to Dismiss Reply, ECF No. 17.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. However, the court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation marks omitted).

### B.  Motion for Temporary Restraining Order

The decision to grant or deny injunctive relief is committed to the sound discretion of the federal district court. *See Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The purpose of a TRO is "to preserve the status quo until there is an opportunity to hold a hearing." 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2951 (3d ed. West 2005). "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. CIV.A.3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.). As such, the same standard governs both the issuance of a TRO and that of a preliminary injunction. *See Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (O'Connor, J.).

Neither form of injunctive relief should be granted unless the movant demonstrates, by a clear showing: "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of

irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the nonmovant; and (4) that the injunction will not undermine public interests." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). The movant seeking a TRO or preliminary injunction must clearly carry the cumulative burden of persuasion on all four enumerated elements in order for the requested injunctive relief to be granted. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Miss. Power & Light Co.*, 760 F.2d at 621; *Guzman*, 540 F. Supp. 3d at 645. "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Speed v. Am.'s Wholesale Lender*, No. 3:14-CV-3425-L, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

Upon determination that a movant is entitled to injunctive relief, a court must further determine the appropriate scope thereof. The scope of a TRO or preliminary injunction "is dictated by the extent of the violation established[.]" *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The injunctive relief "'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Yamasaki*, 442 U.S. at 702). It must therefore "be tailored to redress [each] plaintiff's particular injury," and nothing more. *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (citation omitted).

### III. ANALYSIS

At the heart of this declaratory judgment action are two variants of a quiet title claim. Both are the subject of dispute in the instant Motions before the Court. The Bank seeks a Rule 12(b)(6) dismissal of, while the Couches seek a Rule 65(b) TRO from, the Couches' claim to quiet title against the Bank's claim to the Property based on: (1) the Bank's failure to exercise

power of sale on its lien on the Property within the four-year statute of limitations period provided under TEX. CIV. PRAC. & REM. CODE § 16.035; and (2) the Couches' adverse possession of the Property beyond the five-year statutory adverse possession period provided under TEX. CIV. PRAC. & REM. CODE § 16.025.

To quiet title in his favor, a plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Turner v. AmericaHomeKey Inc.*, 514 F. App'x 513, 516 (5th Cir. 2013) (per curiam) (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). "Further, the plaintiff in a quiet title action must 'recover on the strength of his own title' rather than on the weakness of the defendant's." *Id.* (citing *Humble Oil & Ref. Co. v. Sun Oil Co.,* 191 F.2d 705, 716 (5th Cir. 1951)).

Having reviewed the parties' briefing, evidence, and applicable law, the Court determines that (A) the Motion to Dismiss should be (1) **GRANTED** on the statute of limitations claim to quiet title and (2) **DENIED** on the adverse possession claim to quiet title, while (B) the Motion for TRO should be **GRANTED** on the adverse possession claim to quiet title.

### A.     Motion to Dismiss for Failure to State a Quiet Title Claim

The Court holds that the Bank's Motion to Dismiss the declaratory judgment action brought by the Couches should be: (1) **GRANTED in part** with respect to the claim to quiet title based on the statute of limitations; and (2) **DENIED in part** with respect to the claim to quiet title based on adverse possession.

#### 1. Quiet Title – Statute of Limitations

***Legal Standard.*** Under Texas law, a suit to foreclose on real property must be brought within four years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a);

*see also HSBC Bank USA, N.A. v. Crum*, 907 F.3d 199, 203 (5th Cir. 2018). A cause of action for foreclosure normally accrues on the maturity date of the note or when the maturity date is accelerated. *Id*. Section 16.035(b) states that "a sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(b).

Courts hold that "the plain language of section 16.035(a) does not require that the actual foreclosure sale occur within the four-years limitation period," but instead "requires only that the party seeking foreclosure bring suit not later than four years after the day the cause of action accrues." *Pittman v. Seterus, Inc*., No. 3:18-CV-3076-M-BH, 2019 WL 2425196, at *5 (N.D. Tex. May 10, 2019), *report and recommendation adopted*, No. 3:18-CV-3076-M, 2019 WL 2425189 (N.D. Tex. June 6, 2019), *aff'd*, 786 F. App'x 14 (5th Cir. 2019). Moreover, "a mortgagee does not need to satisfy both section 16.035(a) and (b)." *Bowman v. Cenlar FSB*, No. 3:21-CV-02623-X, 2021 WL 5323761, at *2 (N.D. Tex. Nov. 15, 2021).

*Analysis.* Here, the cause of action accrued when the Bank declared the Note accelerated in its August 5, 2014 counterclaim filed in the First Action. The statute of limitations thus began to run on August 5, 2014. However, the Bank's August 5, 2014 counterclaim simultaneously asserted a claim for judicial foreclosure on the Property against the Couches. The Bank therefore filed its foreclosure lawsuit within the applicable limitations period and preserved the validity of its lien. The date of the actual foreclosure sale is otherwise irrelevant to the Bank's compliance with the statute of limitations. *See Bowman*, 2021 WL 5323761, at *2-*3 (holding that a mortgagee satisfied the statute of limitations by filing a counterclaim for judicial foreclosure within four years of the date of acceleration).

Insofar as the Couches assert the four-year statute of limitations period provided under the Texas Civil Practice and Remedies Code, therefore, the declaratory judgment action fails to state a facially plausible claim to quiet title on the Property and should be dismissed. *Twombly*, 550 U.S. at 570. The Court **GRANTS** the Bank's Motion to Dismiss to the same extent.

2. Quiet Title – Adverse Possession

*Legal Standard.* Under Texas law, a party claiming title by adverse possession must demonstrate "(1) actual and (2) visible possession that is (3) under a claim of right, (4) hostile to another's claim to the property, and (5) peaceable for the applicable limitations period." *Luminant Mining Co., L.L.C. v. PakeyBey*, 14 F.4th 375, 380 (5th Cir. 2021) (citation omitted). If the party "cultivates, uses, or enjoys the property" and "pays applicable taxes on the property" while "claim[ing] the property under a duly registered deed[,]" the applicable limitations period is five years. TEX. CIV. PRAC. & REM. CODE § 16.025.

*Analysis.* At this stage of the proceedings, the Couches have pleaded factual content that amounts to a plausible adverse possession claim to quiet title on the Property.[6] They claim the Property under a duly registered deed and have been the only party paying property taxes on it since at least 2001. The Couches have been the sole, visible, peaceable, and continuous possessors of the Property for more than two decades. Their possession became hostile to the Bank's claim to the Property when the Bank obtained its right to foreclose on November 1, 2015. And their possession remained peaceable until the Bank filed the Eviction Action against the Couches in September 2023 and obtained a judgment of possession one month later.

Contrary to the statute of limitations theory, the Bank does not address how or why the adverse possession pleadings are barred under the doctrine of res judicata or otherwise fail to

---

[6] *See* Not. of Removal Ex. E-2 at 3-7, ECF No. 1-1; Pls.' Mot. for TRO Br. 2-5, ECF No. 4.

state a facially plausible claim to quiet title on the Property.[7] The Court accordingly concludes that—at least this juncture, with the limited and one-sided briefing currently before it—the Bank is not entitled to dismissal of the Couches' adverse possession claim to quiet title on the Property.

Therefore, insofar as the Couches assert the five-year statutory adverse possession period provided under the Texas Civil Practice and Remedies Code, the declaratory judgment action states a facially plausible claim to quiet title on the Property and should proceed. *Twombly*, 550 U.S. at 570. The Court **DENIES** the Bank's Motion to Dismiss to the same extent.

### B. Motion for Temporary Restraining Order

The Court holds that the Couches' Motion for TRO should be **GRANTED** on the basis of its adverse possession claim to quiet title on the Property.

#### 1. Substantial Likelihood of Prevailing on the Merits

The first and foremost factor in the TRO inquiry requires a showing that Plaintiffs are substantially likely to prevail on the merits of at least one claim. *Marquis*, 902 F.2d at 358, 361. For reasons similar to those preventing dismissal, the Court finds that—at least in this stage of the proceedings, with the limited and one-sided briefing available—the Couches are substantially likely to prevail on their adverse possession claim to quiet title on the Property.[8]

#### 2. Substantial Threat of Irreparable Harm

The second TRO factor requires Plaintiffs to demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). An anticipated harm must be imminent and not speculative in order to pose a

---

[7] *See generally* Def.'s Mot. to Dismiss Br., ECF No. 6; Def.'s TRO Resp. Br., ECF No. 12; Def.'s Mot. to Dismiss Reply, ECF No. 17.

[8] *Compare* Not. of Removal Ex. E-2 at 3-7, ECF No. 1-1, *and* Pls.' Mot. for TRO Br. 2-5, ECF No. 4, *with* Def.'s Mot. to Dismiss Br., ECF No. 6, *and* Def.'s TRO Resp. Br., ECF No. 12, *and* Def.'s Mot. to Dismiss Reply, ECF No. 17.

substantial threat. *Guzman*, 540 F. Supp. 3d at 651. And harm is considered irreparable *per se* "where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). The Court finds that the Couches are substantially threatened with the immediate and irreparable loss of their residential homestead, which is currently listed for and pending third-party sale by the Bank. Such cannot be adequately remedied by legal relief at this point in time.

### 3. Balance of Equities

The third TRO factor requires Plaintiffs to demonstrate that their threatened injury outweighs any harm Defendant might suffer as a result of an injunction. *See Marquis*, 902 F.2d at 358. The Court finds that the threatened harm to the Couches dramatically outweighs the harm that a TRO would inflict on the Bank. The Couches face permanently losing the Property that they have lived in and called home for more than twenty years. The Bank, on the other hand, is a large corporate conglomerate that merely faces a temporary loss of sales proceeds on one residential property.

### 4. Public Interest

The fourth and final TRO factor requires a showing that a grant of the prayed relief "will not disserve the public interest." *Janvey*, 647 F.3d at 595 (cleaned up). *A fortiori*, the Court finds that a TRO preventing the Bank from evicting the Couches and selling the Property would actually *serve* the public interest, which is "favors keeping families in their homes until they have been heard on the merits." *Horton v. California Credit Corp. Ret. Plan*, No. 09CV274-IEG-NLS, 2009 WL 700223, at *6 (S.D. Cal. Mar. 16, 2009).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss (ECF No. 5) is **GRANTED in part** and **DENIED in part** and Plaintiffs' Motion for Temporary Restraining (ECF No. 4) is **GRANTED**. It is further **ORDERED** that Plaintiffs' statute of limitations claim to quiet title on the Property is hereby **DISMISSED with prejudice**; and Defendant and its officers, agents, attorneys, assigns, servants, employees, and representatives—and all others in active concert or participation with the foregoing—are hereby **RESTRAINED** from engaging in or performing any act to deprive Plaintiffs of possession of the Property (i.e., the real property located at 9845 Ray White Road, Keller, Texas 76248 in Tarrant County), including but not limited to instituting, prosecuting, implementing, enforcing, maintaining, or continuing with any sale or eviction proceedings relating to the Property and/or Plaintiffs' possession of the Property.

This Temporary Restraining Order **SHALL** remain effective for **fourteen days** and expire at **11:59 PM on March 13, 2024**. Counsel for Plaintiffs and Defendant are **ORDERED** to appear for a preliminary injunction hearing on **Tuesday, March 5, 2024** at **9:00 AM** in the **Second Floor Courtroom** of the **Eldon B. Mahon United States Courthouse** (501 West 10th Street, Fort Worth, Texas 76102). The Court must decide whether the relief decreed in this Temporary Restraining Order shall continue beyond the fourteen-day period and throughout the duration of the above-captioned case. *See* FED. R. CIV. P. 65(b)(2)–(3). Rule 65 also requires the posting of a surety bond. *See* FED. R. CIV. P. 65(c). Accordingly, the parties are **ORDERED** to file supplemental briefing on the foregoing issues in advance of the preliminary injunction hearing, but **not later than March 1, 2024**.

**SO ORDERED** on this **28th day** of **February, 2024**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE